UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NORTHROP GRUMMAN CORPORATION ADMINISTRATIVE COMMITTEE, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-765 |
| FRANCES NELSON, | § § § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.      INTRODUCTION**

Pending before the Court are the parties' cross motions for summary judgment. The plaintiff, Northrop Grumman Corporation Administrative Committee (the "plaintiff"), filed a motion for summary judgment (Dkt. No. 23), to which the defendant, Frances Nelson, responded (Dkt. No. 25). The defendant filed a cross-motion for summary judgment (Dkt No. 24), to which the plaintiff responded (Dkt. No. 26). After having carefully considered the motion, cross-motion, responses, the record and the applicable law, the Court is of the opinion that both the plaintiff's and the defendant's motion for summary judgment should be DENIED.

**II.     FACTUAL BACKGROUND**

The defendant was married to William Nelson ("Mr. Nelson") who was employed by the plaintiff. While employed by the plaintiff, Mr. Nelson participated in the Northrop Grumman Savings Plan (the "Plan"). The defendant and Mr. Nelson divorced in August 2010. As part of the divorce settlement, the defendant and Mr. Nelson agreed to a qualified domestic relations order ("QDRO"). The QDRO granted the defendant 100% of Mr. Nelson's pension plan benefits, which was around $68,500 in September 2010. Upon receipt of the QDRO, the Plan's

record keeper, Hewitt Associates, LLC ("Hewitt"), mistakenly transferred $339,865.25 to the defendant's alternate payee account.[1]

In September 2010, the defendant received a benefits statement from the Plan stating that $339,865.25 was transferred to her account. (Dkt. No. 23-18 at 2). The defendant also received an account summary from the Plan for the period of July 1, 2010, through September 30, 2010, showing a balance of $341,095.84. (Dkt. No. 23-18 at 6). The defendant received quarterly account statements stating that her account balance was around $340,000. The defendant did not withdraw any of the funds until she withdrew $60,000 in early 2013. The defendant retired from her job a year later and transferred the remaining Plan funds—$319,551.56—to her account at JSC Credit Union ("JSC"). (Dkt. No. 24, Ex. 2 at 9); (Dkt. No. 23-18 at 70). The defendant commingled the funds from her Plan account with her personal wages and other retirement benefits as well as her Social Security payments. (Dkt. No. 24, Ex. 2 at 9).

The defendant asserts that "[a]fter [she] consolidated funds at [JSC]; she transferred $200,000 to LPL Financial. She deposited $100,000 into a CD. The remainder of the funds were deposited into a money market IRA at [JSC]." (Dkt. No. 24 at 8). The defendant contends that she did not purchase any traceable items with the commingled funds and maintains that the overpaid funds have been dissipated.[2] (Dkt. No. 24 at 16). In response, the plaintiff argues that the defendant has possession of both overpaid funds and tangible assets that were purchased with the overpaid funds. (Dkt. No. 26 at 16).

---

[1] The plaintiff alleges that the erroneous payment was made due to the fact that Mr. Nelson and the other Plan member had the same name.
[2] The defendant asserts that the commingled funds were used on, *inter alia*, daily family expenses, gambling, paying taxes and dental work. (Dkt. No. 24 at 15).

On October 3, 2014, Hewitt sent a letter to the defendant asking her to call their benefits center to discuss the death of "William S. Nelson."[3] (Dkt. No. 23, Ex. 1-A at 76-78). Shortly thereafter still in October, Hewitt was notified of its mistaken overpayment. On April 1, 2015, Hewitt, contacted JSC and requested that JSC return the $319,551.56 mistakenly overpaid to the defendant. The defendant admitted that she advised JSC not to return the money to the Plan. (Dkt. No. 23, Ex. 1-A at 80-83). On May 28, 2015, the plaintiff forwarded a letter to the defendant explaining both the nature of her Plan and the mistaken overpayment. (Dkt. No. 23, Ex. 2-D). On August 26, 2015, Hewitt sent a second letter to JSC requesting the return of $304,653.72 to the Plan. (Dkt. No. 23, Ex. 3-G). Thereafter, JSC filed a Petition for Interpleader and placed the disputed funds in the registry of this Court. On March 23, 2016, the plaintiff filed this action under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), seeking equitable relief to recoup an overpayment of pension benefits. On May 9, 2016, the defendant filed her answer and affirmative defenses to the complaint.

### III. CONTENTIONS OF THE PARTIES

#### A. Plaintiff's Contentions

The plaintiff contends that the overpayment to the defendant was made due to an administrative error and as such the overpayment should be returned in full. The plaintiff also asserts that its ERISA claim qualifies as an equitable action under which it should be able to recover a Plan overpayment. Specifically, the plaintiff seeks to recover overpaid Plan benefits from the defendant that are (i) identifiable, (ii) belong in good conscience to the Plan, and (iii) are in the defendant's possession or are traceable to property in the defendant's control. The plaintiff argues that any of the defendants comingled funds or traceable assets should be subject to the plaintiff's right to equitable relief. Accordingly, the plaintiff asks that the Court grant its

---
[3] At the time William S. Nelson, the ex-husband of the defendant was still alive.

motion for summary judgment on its ERISA cause of action and award it all relief sought against the defendant in the complaint.

### B. Defendant's Contentions

The defendant contends that the plaintiff is not entitled to succeed on an equitable action against her because the plaintiff is not free from wrongdoing a prerequisite for a successful action. The defendant asserts that the plaintiff is responsible for Hewitt's negligent actions because the plaintiff failed to properly supervise Hewitt, who was acting as the plaintiff's agent. The defendant further asserts that the plaintiff breached its fiduciary duty to her by negligently handling her account and making repeated misrepresentations in regards to the account balance. The defendant contends that the plaintiff should be estopped from recouping the overpayment because she has relied, to her detriment, on the words and actions of the plaintiff. The defendant further argues that an equitable recovery by the plaintiff is prohibited; claiming that she has spent the overpaid funds and that the plaintiff is not entitled to recover from her general assets. Consequently, she argues that the plaintiff's motion for summary judgment should be denied and her cross-motion for summary judgment should be granted.

## IV. CONCLUSION

"In determining whether a genuine dispute exists as to any material fact, the court must consider all of the evidence in the record but refrain from making any credibility determinations or weighing the evidence." *James v. State Farm Mut. Auto. Ins. Co.*, 719 F.3d 447, 466 (5th Cir. 2013). The court must view all reasonable inferences in the light must favorable to the non-movant. *Id*. Without commenting on the strength or credibility of the evidence presented, the Court determines that the parties have raised genuine issues of material fact in regards to, *inter alia*, whether the defendant's defense of laches is applicable here and/or whether the overpaid

funds are associated with a specifically identifiable *res* separate and apart from the defendant's general assets. Having found a fact issue, the Court deems summary judgment improper. *See E.E.O.C. v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir. 1999). Accordingly, it is therefore,

ORDERED, ADJUDGED and DECREED that both the plaintiff's and the defendant's motion for summary judgment are **DENIED.**

It is so **ORDERED**.

SIGNED on this 9th day of May, 2017.

_____
Kenneth M. Hoyt
United States District Judge